*Formatted for Electronic Distribution*                                      *For Publication*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF VERMONT**

_____

In re:

    **ALLEN JOHN BARTLETT,**
    **DAWN MARIE BARTLETT,**                                Chapter 13 Case
            **Debtors.**                                          # 05-10340
_____

                                                   Filed & Entered

**UNITED STATES OF AMERICA,**                On Docket
            **Plaintiff,**
      v.                                                   Adversary Proceeding
**ALLEN JOHN BARTLETT and**                 11/02/06              # 06-1021
**DAWN MARIE BARTLETT,**
            **Defendants.**

_____

*Appearances:*    *Geoffrey Walsh, Esq.*                         *Melissa Ranaldo, Esq.*
                         *Vermont Legal Aid*                           *Assistant U.S. Attorney*
                         *Springfield, VT*                                 *Burlington, VT*
                         *Attorney for Defendants*                   *Attorney for Plaintiff*

## MEMORANDUM OF DECISION
### DENYING PLAINTIFF'S MOTION AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON COUNT II OF THE COMPLAINT

      The United States of America, acting on behalf of the Rural Housing Service ("RHS" or "Plaintiff"), has filed a complaint presenting two counts: the first seeks revocation of the August 15, 2005 confirmation order entered in the bankruptcy case of Allen and Dawn Bartlett (the "Bartletts" or "Defendants"), and the second seeks a declaration that the subject real property – the Bartletts' residence – is not property of their bankruptcy estate (doc. # 1). The parties have cross-moved for summary judgment on the second count of the complaint (doc. ## 12, 13). For the reasons set forth below, the Court finds that the Bartletts had an interest in the subject property at the time they filed their bankruptcy petition and therefore it is property of the estate. Accordingly, the Court grants the Defendants' motion for summary judgment and denies the Plaintiff's motion for summary judgment on Count II of the complaint.

### JURISDICTION

      The Court has jurisdiction over this adversary proceeding and the pending motions for summary judgment under 28 U.S.C. §§ 1334 and 157(b)(2)(B), (K), (O).

## LEGAL ISSUE PRESENTED

The question presented is whether the Bartletts had any interest in their residential real property (the "Property") as of the date they filed their bankruptcy petition, and hence whether the Property was property of their bankruptcy estate. Since the Property was the subject of two foreclosure actions prior to the filing of the petition, one of which proceeded as a strict foreclosure and one that resulted in a judgment authorizing a sale, discerning who had what interest in the Property at various stages of the two foreclosure actions and at the time the Bartletts filed their bankruptcy case is less than straightforward. To reach its ultimate response to this question, the Court must determine: (1) the effect of a state court strict foreclosure judgment by a second mortgagee on a mortgagor's equitable right of redemption, and (2) whether a U.S. District Court judgment of foreclosure can reinstate a mortgagor's previously-extinguished equitable right of redemption.

A complete answer to these questions also requires the Court to address whether either the District Court foreclosure decree or the Bankruptcy Court confirmation order, or both, have *res judicata* effect, which would preclude the Plaintiff from now challenging the Defendants' interest in the Property.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the record shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056. A genuine issue exists only when "the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. See Anderson, 477 U.S. at 247. In making its determination, the court's sole function is to determine whether there is any material dispute of fact that requires a trial. See id. at 249; see also Palmieri v. Lynch, 392 F.3d 73, 82 (2d Cir. 2004); Delaware & Hudson Ry. Co. v. Conrail, 902 F.2d 174, 178 (2d Cir. 1990). Factual disputes that are irrelevant or unnecessary are not material. See Anderson, 477 U.S. at 247. The court must view all the evidence in the light most favorable to the nonmoving party and draw all inferences in the nonmovant's favor. See Cruden v. Bank of New York, 957 F.2d 961, 975 (2d Cir. 1992). Only disputes over facts which might affect the outcome of the suit under the governing law preclude entry of judgment. See Anderson, 477 U.S. at 248.

Here, the parties both assert that there are no material facts in dispute and that summary judgment is proper. The Court agrees.

2

## **UNDISPUTED MATERIAL FACTS**

The parties have stipulated that the following facts – which generally outline the filings in the related federal district court and state court cases – are both material and undisputed:

1. The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A), (J), and (O), and this is a core proceeding.

2. The Plaintiff is the United States of America, acting on behalf of the United States Department of Agriculture, Rural Housing Service. The Rural Housing Service ("RHS") has a State Office at 89 Main Street, City Center, Montpelier, Vermont.

3. The Defendants, Allen John Bartlett and Dawn Marie Bartlett ("the Bartletts") are a married couple residing at 1512 Fowler Road, Whitingham, Vermont.

4. On or about August 3, 1984, the Bartletts executed and delivered to the United States a promissory note in the amount of $49,500.00. A true and accurate copy of the promissory note was filed with RHS's proof of claim, dated April 19, 2005.

5. On that same date, in order to secure repayment of the promissory note given to RHS, the Bartletts executed and delivered to the United States a Mortgage Deed pledging, *inter alia*, the house and land located at 1512 Fowler Road, Whitingham, Vermont ("the Property"). The Mortgage Deed is filed in the land records of the Town of Whitingham, Vermont in Book 72, Page 86.

6. On or about March 4, 2002, the Bartletts executed and delivered to Champion Mortgage, a Division of Key Bank, USA, National Association, ("Champion Mortgage"), a promissory note in the amount of $14,000.

7. On that same date, in order to secure repayment of the Promissory Note given to the Champion Mortgage, the Bartletts executed and delivered to Champion Mortgage a second mortgage deed. The second mortgage deed is filed in the land records of the Town of Whitingham, Vermont in Book 114, Page 554.

8. On or about July 19, 2003, Champion Mortgage filed a complaint against the Bartletts for strict foreclosure of the second mortgage deed in Windham Superior Court. The United States was not named as party in that action. A copy of the Champion Mortgage complaint was recorded on July 22, 2003 in the land records for the Town of Whitingham at Book 119, Page 574.

9. On October 10, 2003, the Windham Superior Court entered a Judgment and Decree of Foreclosure ("the Decree") against the Bartletts. The Decree states that the Bartletts were served on July 25, 2003, judgment was entered for Champion Mortgage, and an accounting was taken on October 8, 2003. The Decree set a final redemption date of April 12, 2004.

10. On March 30, 2004, the United States filed a Complaint for Foreclosure by Power of Sale in United States District Court for the District of Vermont (the "District Court"). The Complaint was recorded in the land records for the Town of Whitingham at Vol. 122, Page 182 on April 1, 2004.

11. In Champion Mortgage's state court foreclosure action, a Certificate of Non-redemption was issued on April 20, 2004. The Certificate of Non-redemption, along with the Judgment and Decree of Foreclosure and a Vermont Property Transfer Tax Form were recorded in the land records for the Town of Whitingham on April 23, 2004 at Vol. 122, Page 294 and 296.

12. In the RHS' federal court foreclosure action, judgment by default was entered in favor of the United States and against the Bartletts and Champion Mortgage, an accounting was taken and on July 23, 2004, and a Judgment Order, Decree of Foreclosure and Order for Judicial Sale was entered. The final redemption date, January 25, 2005, expired without action by any defendant and a Certificate of Non-redemption was entered on January 26, 2005.

13. The United States' Foreclosure Decree and the Certificate of Non-redemption were recorded on February 2, 2005 in the land records for the Town of Whitingham in Vol. 125, pages 58 and 59.

14. The Bartletts filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code ("the Petition") on March 21, 2005 (In re Allen John Bartlett and Dawn Marie Bartlett, Bankruptcy Case No. 05-10340 cab).

15. As of the date of the bankruptcy filing, the judicial sale authorized by the federal court foreclosure decree had not occurred.

(doc. # 10).

The parties' stipulated time-line ends at the point when the Defendants filed their bankruptcy petition. By filing their chapter 13 petition, the Defendants proposed, *inter alia*, to cure their pre-petition default on their home mortgage pursuant to 11 U.S.C. § 1322(b)(3), (5) (doc. #8). The Defendants provided a Supplemental Statement of Undisputed Material Facts (doc. #13) which recited the filings made by the Parties in the chapter 13 case. Those filings are summarized as follows:

a. In May 2005, RHS filed an Objection to Confirmation of the Chapter 13 plan as well as an Amended Proof of Claim.

b. In June 2005, the Defendants filed a First Amended Chapter 13 Plan and RHS filed Objections to that Plan.

c. "Following a hearing at which RHS appeared by counsel and waived objections except as recognized in the plan confirmation Order," the Court entered an Order confirming the Amended Chapter 13 Plan on August 15, 2005.

d. The Defendants have paid approximately $3,554.00 to the Chapter 13 Trustee under the Plan (as of the April 2006 date of the Supplemental Facts filing), of which the Trustee paid $2,810.07 to RHS toward RHS's arrearage proof of claim.

e. In July 2005, the Defendants filed an Adversary Proceeding against Champion Mortgage Company, <u>Allen and Dawn Bartlett v. Champion Mortgage</u>, A.P. no. 05-1039.

4

f.  In August 2005, Champion notified the Court, through counsel, that it would not contest the Defendants' adversary proceeding.

g.  On October 5, 2005, the Court entered a final judgment order in the Champion adversary proceeding, declaring Champion to be unsecured.

h.  The Defendants then filed an unsecured proof of claim on behalf of Champion, and Champion did not file a superseding claim.

See doc. #13. RHS has not disputed any of these supplemental facts.

## DISCUSSION

**I.  The Declaratory Judgment Question:
Is the Bartletts' Real Property Part of the Bankruptcy Estate?**

    *A.  Vermont: A Title Theory State with Both Strict Foreclosure and Foreclosure Sale Procedures*

Vermont is a title theory state. This means that "a mortgage conveys legal title to the mortgagee at the time the mortgage is granted." Town of Weathersfield v. Merchants Bank (In re Canney), 284 F.3d 362, 369 (2d Cir. 2002). In other words, all that the mortgagor holds while the mortgage debt on the property is outstanding is a "defeasible equitable interest known as the 'equity of redemption.'" In re Pellegrino, 284 B.R. 326, 328 n.8 (Bankr. D.Ct. 2002). Upon a mortgagor's payment default in Vermont and Connecticut,[1] a mortgagee may pursue its rights through a strict foreclosure action – a process which does not involve a foreclosure sale. Upon such a default, "the court will normally set a time period in which the borrower may pay off or redeem the mortgage or debt. If the borrower fails to do so in the allotted time, the lender is given an immediate right to possession of the property." Canney, 284 F.3d at 369 n.6 (quoting Baxter Dunaway, The Law of Distressed Real Estate Foreclosure, Workouts, Procedure § 12.16 (1999)). Thus, if the mortgagor does not redeem the foreclosed property within the prescribed time, "the mortgagee can unify title in itself by foreclosing the mortgage, a process which involves, *inter alia*, the extinguishment of the mortgagor's 'equity of redemption.'" Pellegrino, 284 B.R. at 328 n.8. Pursuant to the Vermont strict foreclosure procedure,[2] the foreclosing mortgagee "obtains full and complete title and has the right to sell the property and retain the surplus, if any." Stowe Ctr., Inc. v. Burlington Sav. Bank, 141 V. 634, 637, 451 A.2d 1114, 1115 (1982). Against this legal backdrop, we evaluate the interests of the first and second mortgagees against the Property, both of whom foreclosed on it. The odd twist in this case is that the second mortgagee foreclosed first.

---

[1] "Strict foreclosure is the normal method of foreclosure only in Connecticut and Vermont." Canney, 284 F.3d at 369 (citation omitted).

5

RHS obtained legal title to the Property when it granted the Defendants a first mortgage. See Canney, 284 F.3d at 369. The law is less clear concerning what interest in the Property Champion Mortgage, a Division of Key Bank, USA, National Association ("Champion"), obtained at the time it granted the Defendants a second mortgage. Vermont courts have not directly addressed that question. However, the extremely sparse case law from another title state as well as legal compendia cited by RHS provide the following analysis, which this Court finds persuasive.

"Any interests in land which may be the subject of sale . . . may be mortgaged. . . . Equitable interests, as well as legal, may be mortgaged." 5 Herbert T. Tiffany and Basil Jones, Tiffany Real Prop. § 1384 (3d ed, 1939). In Houle v. Guilbeault, 40 A.2d 438, 440, 70 R.I. 421, 425 (R.I. 1944), the Rhode Island Supreme Court stated that "[w]here the legal title passes from a mortgagor to a first mortgagee, a second mortgage is, in substance, a mortgage merely of the mortgagor's equity of redemption."[3] See also 5 Tiffany Real Prop. § 1387 ("a junior mortgage, that is, a mortgage of land already subject to a mortgage, vests no legal title in the junior mortgagee, such title being already vested in the prior mortgagee."). Pursuant to these authorities, in a title theory state, when a mortgagor grants a second mortgage, the only interest the mortgagor has left to convey to the second mortgagee is its equity of redemption. Therefore, the property interest acquired by the holder of the second mortgage is limited to the equity of redemption that the mortgagor originally possessed.

The question then arises as to what interest is conveyed when a second mortgagee forecloses before the first mortgagee, and the property is in a title theory state that follows strict foreclosure procedures. Champion followed the proper procedures to complete a strict foreclosure of its second mortgage: it filed a complaint for strict foreclosure; the state court entered a judgment and decree of foreclosure, and set a final redemption date (April 12, 2004); the Bartletts did not redeem; and the state court issued a certificate of non-redemption, which was recorded along with a Vermont Property Transfer Tax form, in the Town land records on April 20, 2004. Champion could not foreclosure upon the Bartletts' legal title, as that was held by RHS. Rather, Champion foreclosed on the only interest the Bartletts retained in their property, their equitable fee, thereby extinguishing the Bartletts' right of redemption in the property. As a result, the Bartletts retained no equitable or legal interest in the Property after their right of redemption expired in Champion's strict foreclosure action. See Pellegrino, 284 B.R. at 328 n.8. RHS held the legal interest, and Champion held the equitable interest.

---

[2] See 12 V.S.A. chapter 163, subchapter 6.

[3] Maine, another title theory state, has codified the interest of a second mortgagee. The pertinent statute, 14 M.R.S.A. § 6321, governing foreclosure of a second or junior mortgage, has been described as providing that "the second mortgagee's interest foreclosed on is limited to the mortgagor's equity of redemption, and . . . the first mortgagee's interest (legal title to the real estate) is not affected by the foreclosure of the second mortgage. The first mortgagee is not even joined as a party. Thus, in the case of a second mortgage foreclosure, the interest foreclosed on and the interest subsequently sold at a public sale is not the fee interest in the land . . . but the mortgagor's equity of redemption . . ." Brickyard Assocs. v. Auburn Venture Partners, 626 A.2d 930, 933 (Me. 1993), explaining the text and operation of 14 M.R.S.A. § 6321 (citation omitted).

6

If this were the end of the story, then the Bartletts would have no recourse in this Court because, not having redeemed during the foreclosure of the second mortgage, they were "foreclosed and forever barred of all equity of redemption" in the Property (doc. #11, ex. 5). They would have had no interest in the Property in any subsequently filed bankruptcy case. The story line, however, continued to evolve and become more convoluted. The next twist in the story is found in the text of the July 23, 2004 Judgment Order, Decree of Foreclosure, and Order for Judicial Sale in the foreclosure action that RHS filed and entered in its federal District Court action against the Bartletts and Champion.

### B.   *The RHS Foreclosure Action in Federal Court and the Judgment of Foreclosure Sale*

As indicated above, in March 2004 RHS filed a "Complaint for Foreclosure by Power of Sale" in the U.S. District Court for the District of Vermont (the "District Court") against the Bartletts and Champion Mortgage. In that complaint, RHS pursued foreclosure by power of sale, an alternative procedure to strict foreclosure under the Vermont statutes, see 12 V.S.A. §§ 4531a, 4532, and the procedure that is required when the plaintiff is the federal government, see 28 U.S.C. § 2410(c). The complaint recited the Bartletts' default on their mortgage, the demand made by RHS, and the failure of the Bartletts to pay the amount due. RHS sought to foreclose the equity of redemption of the "defendants" and obtain an order for a public sale of the premises (doc. #11, ex. 8). Neither the Bartletts nor Champion appeared in that proceeding. The District Court entered a Judgment Order, Decree of Foreclosure, and Order for Public Sale on July 23, 2004 (the "District Court Order") (doc. #11, ex. 9). The District Court Order recited the facts of the case, and noted that defendant Champion's "interest or lien, if any, is subsequent or subordinate to the mortgage which is the subject of this action." Id. at p. 2. The District Court Order also indicated that "all the defendants" had been served with the complaint. The Bartletts point out that RHS drafted both the foreclosure complaint and the proposed District Court Order (doc. # 13, p. 8; doc. # 28, p. 23), and RHS does not contest this statement.

Of particular importance are the following provisions of the District Court Order that extinguished each defendant's right of redemption:

> It is therefore ORDERED ADJUDGED AND DECREED that **the defendants Allen Bartlett and Dawn Bartlett** may redeem the premises by paying . . . on or before January 24, 2005 . . . .
> It is further ORDERED, ADJUDGED AND DECREED that if the defendants have not redeemed as provided above, the following named defendant shall have the following time in which to redeem: Champion Mortgage until January 25, 2005;
> It is further ORDERED, ADJUDGED AND DECREED that if the defendants have not redeemed as provided above, then the defendants and all persons claiming under, from and through them shall be barred forever from all equity of redemption in the premises.

District Court Order at p. 3 (emphasis added). The District Court Order then sets out the procedure for a sale of the Property, including this particularly crucial language:

7

> A copy of the notice of the sale shall be served on the mortgagors and defendants. . . . **The defendant/mortgagor is entitled to redeem the premises at any time prior to the sale by paying in full the amount due under this decree**.

District Court Order at p. 5 (emphasis added). The terms "mortgagors" and "defendants" are not defined in the District Court Order; neither is "defendant/mortgagor." The Defendants contend that the District Court's foreclosure decree referred to them, granted them a right to redeem which would not expire until a foreclosure sale took place pursuant to the Vermont statute governing actions to foreclose by power of sale, 12 V.S.A. § 4532(i)[4], and extinguished all junior liens and claims against the property, including the rights of Champion (doc. # 13, pp. 1-2, 8). The question of whether the District Court Order granted or reinstated the Defendants' right of redemption is important because the right of redemption is a property right, and if the Bartletts had such a right in their property at the point they filed their bankruptcy petition, that property right would become property of the estate, the automatic stay provisions of the Bankruptcy Code would apply, RHS would have to obtain a relief from stay to complete its foreclosure proceeding, and the Bartletts could treat the claim in their bankruptcy plan.

RHS acknowledges that Champion's equity of redemption was foreclosed in RHS's foreclosure proceeding, but argues that this fact is not dispositive because Champion – not the Bartletts – held the statutory right of redemption until sale (doc. # 23, p. 2). Parsing the language of the foreclosure decree, RHS insists that the "mortgagor/defendant" referred to was not the Bartletts but the holder of the statutory right to redeem under Vermont law, 12 V.S.A. § 4532(e), which defines "mortgagor" for the purposes of a foreclosure sale as "the mortgagor or the then record owner of the premises." Because Champion (having by that time completed its strict foreclosure proceeding against the Bartletts) was the "then record owner" of the property at the time RHS's decree was entered, RHS concludes that the Bartletts had no outstanding statutory right of redemption at the point they filed their bankruptcy petition on March 21, 2005 (doc. # 23, p. 8). This argument is not supported by the text of the District Court Order.

This Court finds RHS's argument that Champion was granted a statutory right of redemption under the District Court Order flawed on several counts. To begin with, the plain language of the District Court Order certainly states that the Bartletts have a statutory right of redemption which may be exercised until the foreclosure sale. Although the sentence reads that the "defendant/mortgagor" may redeem the property, the fact that this term is set out in the singular cannot be dispositive of the identity of the entity granted the right

---

[4] 12 V.S.A. § 4532(i), entitled "Right of redemption by mortgagor," provides:
> **Right of redemption**: The mortgagor is entitled to redeem the premises at any time prior to sale by paying the full amount due under the mortgage, including the costs and expenses of the sale.

8

to redeem, since this is the only reference in the singular in the entire document (when not referring to Champion explicitly). The provisions must be read in the context of the entire order and the foreclosure case. Further, this term refers to an entity that is both a defendant and a mortgagor, given the slash between the two descriptors.[5] This phrase could refer to both the Bartletts and Champion if it said just "defendant." But since it says "defendant/mortgagor," it cannot describe Champion because, as a second mortgagee, Champion could not, by any reading of the language of the District Court Order, be transformed from a second mortgagee/institutional lender into a mortgagor. In addition, the facts set out in the "Foreclosure by Power of Sale" portion of RHS's foreclosure complaint (doc. 11, ex. 8, ¶¶ 5-14) refer exclusively to the Bartletts. This compels the conclusion that RHS viewed only the Bartletts as possessing the statutory right of redemption. This Court finds that the complaint and decree together, both of which were drafted by RHS, acknowledged the status of RHS as mortgagee and the Bartletts as mortgagors. Champion's interest was noted, but was left amorphous, as the District Court Order recited that Champion "claims or may claim to have some interest in or lien upon the mortgaged premises, or some part thereof." (Id. at ¶ 7). The District Court Order provided the Bartletts not only with a six-month right to redeem, but also with a statutory right to redeem until the foreclosure sale. The District Court Order provided Champion with a right to redeem that expired on the day after the six-month redemption period ended for the Bartletts.

Even if this Court were to find the "defendant/mortgagor" language ambiguous – i.e., "capable of more than one meaning when viewed objectively by a reasonably intelligent person," Brass v. Am. Film Techs., Inc., 987 F.2d 142, 149 (2d Cir. 1993), a finding which would stretch the definition of ambiguity to its outer limits – RHS still does not have a winning argument. If an order is ambiguous, "the Court must construe any possible ambiguity [in the order] against [RHS], as it was the one that 'drew the order, chose the language, and presented it to the judge for approval.'" A.V. by Versace, Inc. v. Gianni Versace, S.p.A., 87 F. Supp. 2d 281, 291-92 (S.D.N.Y. 2000) (quoting Gluck v. Camden Fire Ins. Ass'n, 204 F.2d 183, 185 (2d Cir. 1953)). This rule of construction is particularly applicable here where the Bartletts did not appear in the District Court proceeding and the decree was entered by default. See also In re Parker, 269 B.R. 522, 530 (D. Vt. 2001) (noting disparity in bargaining power between plaintiff government agency and defendant low-income tenant and construing lease against plaintiff).

What gives rise to the ambiguity is not the text of the District Court Order as it was written and when it was written, but rather RHS's current attempt to impose a construction on the terms of the District Court Order in order to transform Champion into a "defendant/mortgagor" for the purpose of defeating the Defendants' argument that they possessed a property interest (the statutory right of redemption) at the point

---

[5] On the same page as the "defendant/mortgagor" reference, the decree states that "[a] copy of the notice of the sale shall be served on the mortgagors and defendants . . ." indicating that the aforementioned singular reference may be a typographical error or, as the Bartletts contend, a boilerplate reference that RHS dropped into the decree that does not specifically pertain to these parties.

they filed for bankruptcy relief. RHS's current argument focuses on the legal consequences of Champion's foreclosure prior to the District Court issuing the decree, even though the decree was silent as to that salient occurrence.

At the time RHS filed its foreclosure action in District Court, the Champion foreclosure action was still pending in state court and the Bartletts' right of redemption had not yet expired. The Champion foreclosure was concluded in April 2004; the District Court Order was issued three months later. Although RHS had ample time and opportunity to do so, it did not amend its proposed District Court Order or move to modify its judgment of foreclosure to reflect that, at that point, only Champion had an interest in the Property. RHS bears the onus for not doing so, because it could easily have discovered that the Champion foreclosure was complete and that the Defendants' right of redemption had been extinguished. "If a party has 'sufficient facts concerning [another's] interest in the property to call upon him to inquire, he is charged with notice of such facts as diligent inquiry would disclose.'" Myers v. LaCasse, 176 Vt. 29, 40, 838 A.2d 50, 58 (2003) (quoting Black River Assocs. v. Koehler, 126 Vt. 394, 399, 233 A.2d 175, 179 (1967)). RHS knew Champion had an interest, but failed to seek out the facts which would have clarified exactly what that interest was. See Celli v. First Nat'l Bank of Northern New York (In re Layo), 460 F.3d 289, 293 (2d Cir. 2006) (noting that checking county records is the "most basic type of due diligence"). Therefore, RHS must be charged with notice of Champion's foreclosure against the Bartletts, which left the Bartletts with no property interest. Instead of remedying any ambiguity in the District Court Order by explicitly defining which entity was granted the statutory right of redemption, or moving to amend the decree prior to entry of the District Court Order, RHS now attempts to retrofit a peculiar interpretation of the terms by extrapolating backward from the position it takes in this Court today. The meaning urged by RHS in the context of this adversary proceeding, filed nineteen months after the District Court Order was entered, defies the plain language of the document that it drafted, and the Order must be construed against RHS. This after-the-fact exercise in interpretation cannot substitute for the plain language of the District Court Order, which unequivocally indicates that the Bartletts had the right to redeem the Property until the foreclosure sale. Whether the Bartletts actually had the right to redeem under the statute as of that date is not determinative of the outcome; it is the language of the District Court Order that controls. See also In re Klus, 173 B.R. 51, 55-56 (Bankr. D. Conn. 1994) ("A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. Nor are the *res judicata* consequences of a final, unappealed judgment on the merits altered by the fact that the judgment may have been wrong . . .").

RHS stresses that the "District Court's entry of a foreclosure judgment did not restore title of any kind to the Bartletts" (doc. # 23, p. 14). This is correct: the Defendants did not regain title to the property by way of the District Court foreclosure proceeding. However, the District Court Order did reinstate their statutory

10

right of redemption. It has long been held that it is wholly within a foreclosing mortgagee's power to grant rights to a borrower/mortgagor which might not have otherwise been available, such as by waiving the consequences of default and foreclosure, accepting payments, and/or restoring and extending redemption rights. See Milestan v. Tisi, 140 Conn. 464, 473, 101 A.2d 504, 508-09 (Conn. 1953) (citing Lounsbury v. Norton, 59 Conn. 170, 177, 11 A. 153 (Conn. 1890) for the holding that "payments made upon a mortgage debt pursuant to an agreement and subsequent to the date title vested by foreclosure in the mortgagee operated to rehabilitate the mortgagor's right to redeem as fully as if the judgment of foreclosure had never been had.... There is no difference in principle whether the action is brought to foreclose a mortgage or a judgment lien. In either instance, the parties may restore the right of redemption, as the conduct of the parties in the case at bar has done."); Findlay v. Longe, 81 Vt. 523, 71 A.829, 831 (Vt. 1909) ("The receiving of the whole or part of the mortgage debt, either directly or indirectly, after the time for redemption has expired is of itself sufficient to let in the mortgagor to redeem."). These venerable cases support the well-settled rule that a mortgagee, by agreement or by conduct, may revoke a prior foreclosure and restore the right of redemption to a mortgagor.

This Court therefore finds that the July 2004 District Court Order reinstated the Bartletts' right of redemption, and bestowed upon the Bartletts the right to redeem the Property at any time prior to the RHS foreclosure sale.

### C. *Effect of the Bankruptcy Filing and Plan Confirmation Proceedings*

On March 21, 2005, when the Defendants filed their petition for relief under Chapter 13, an estate was created that included "all legal or equitable interests" that they held at that time. See 11 U.S.C. § 541(a)(1)[6]. The foreclosure sale provided for in the District Court Order had not yet taken place. Since a right of redemption is an interest of the debtor in property that is property of the estate under § 541(a)(1), see Wragg v. Federal Land Bank, 317 U.S. 325, 328 (1943) (statutory right of redemption was interest within the jurisdiction of the bankruptcy court under the Bankruptcy Act), that interest became part of the bankruptcy estate on the petition date.

Once this right of redemption became part of the estate, §1322 governs the Defendants' rights vis a vis the RHS mortgage. This section "which contains provisions uniquely tailored to protect homeowners' primary residences," In re Taylor, 286 B.R. 275, 279 (D.Vt. 2002), provides, in relevant part, that a Chapter 13 plan may –

> (b)(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;
> * * *

---

[6] All statutory references from this point forward refer to Title 11 U.S. Code (the "Bankruptcy Code"), unless otherwise indicated.

11

>  (c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law –
>  (1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured . . . until such residence is sold at foreclosure sale that is conducted in accordance with applicable nonbankruptcy law.

11 U.S.C. § 1322(b)(2), (c)(1).

"Under the express terms of §1322(b)(1), a homeowner can cure a default on her principal residence until the residence is sold at a foreclosure sale under the applicable nonbankruptcy law." Taylor, 286 B.R. at 280. Accord In re Beeman, 235 B.R. 519, 523 (Bankr. D.N.H. 1999) ("In essence, §§ 1322(b) and (c) allow a Chapter 13 debtor to cure and reinstate a mortgage on the debtor's principal residence up until the time 'such residence is sold at a foreclosure sale'"). Vermont's foreclosure law supplies the relevant nonbankruptcy law, and here, the relevant law is not the law of strict foreclosure, but the law relating to foreclosure sale, as "Vermont foreclosure law affords debtors the right to request a foreclosure sale instead of permitting a mortgagee to proceed by strict foreclosure. See 12 V.S.A. § 4431a." Id. at 282. In Taylor, the Vermont District Court recognized the more expansive options available in bankruptcy for debtors whose property was foreclosed upon in state court but filed bankruptcy before the equity of redemption had expired:

> There is also no doubt the debtor's rights to cure under state law are extinguished at the date of the foreclosure judgment. But [the debtor] is not seeking to cure under Vermont's foreclosure law. Instead, she is seeking bankruptcy protection under federal law, and Section 1322(c)(1) creates an independent federal right to cure. The [debtor's] right of redemption is relevant only to the extent that it provides her with substantive state law property rights in the subject property sufficient to guarantee the availability of Section 1322(c)(1) relief.

Taylor, 286 B.R. at 283. Taylor underscores the fact that § 1322(c)(1) is available only to Chapter 13 debtors to cure a lien on the debtor's principal residence. Id. Post-Taylor cases, particularly CUC Mortgage Corp. v. Cavacas (In re Cavacas), No. 03-1063, 2004 WL 1661008 (Bankr. D.Vt. July 22, 2004), have held that mortgagors may use § 1322 to reinstate and cure their mortgage as long as their redemption period had not expired prior to the filing of the petition. In this case, the District Court Order reinstated the Defendants' right to redeem that would not expire until the foreclosure sale occurred. The sale had not yet occurred on the date the mortgagors filed for bankruptcy relief. The District Court Order "became a final judgment settling all issues as to the validity of the mortgage and notes." Stowe Center, Inc., 141 Vt. at 637, 451 A.2d at 1115. Thus, upon filing their chapter 13 case, the Defendants had the right to invoke § 1322 to cure their default on the home mortgage held by RHS.

## II. Resolution of the Summary Judgment Cross-Motions

Although the Court has traveled a long way through the thicket of state and federal foreclosure law before arriving at the conclusion that the Bartletts had a property interest in their residence on the date they

filed for bankruptcy, thereby allowing them to invoke the provisions of § 1322, that conclusion, while essential to disposing of RHS's declaratory judgment claim, is not the sole ground upon which the Court decides the cross-motions.

Both state and federal law compel the conclusion that since RHS actively participated in the confirmation process in the Defendants' bankruptcy case, raised an objection to the Defendants' Chapter 13 plan, negotiated a settlement of that objection, and agreed to the confirmation order entered in this case, it cannot now contest the legitimacy of the Debtor's interest in the Property. Such attacks are barred by the principle of *res judicata.* See In re Layo, 460 F.3d 289 (2d Cir. 2006). The same analysis applies to the District Court Order.

### A. *Negotiation of the Terms of the Plan and Consent to Confirmation Order*

On April 4, 2005, the Defendants filed a Chapter 13 plan, the purpose of which was, *inter alia*, "to cure the default on their home mortgage held by U.S.D.A./Rural Housing Service pursuant to 11 U.S.C. § 1322(b)(3), (5)" (doc. # 8, p. 1). The next month, the Defendants filed a First Amended Chapter 13 Plan proposing to cure their default by paying directly to RHS all regular monthly payments falling due after the filing of the plan; paying the pre-petition arrearage in monthly installments; and modifying the RHS mortgage by limiting RHS's secured claim to the fair market value of the Property (the value of which would be determined in a separate adversary proceeding) (doc. # 17, pp. 1, 2). Confirmation of the plan would "constitute a finding that: (a) the debtors are curing the default on their mortgage with U.S.D.A./Rural Housing within a reasonable period of time." Id. at 2. The plan indicated that Champion's claim was wholly unsecured, that "[a]ny second mortgage lien or security interest in the debtor's residence claimed by Champion will be voided in an adversary action or motion filed in this case," and "[t]he title to the property of the estate shall revest in the debtors upon termination of [t]his plan." Id. at 4. RHS objected to confirmation of the First Amended Plan, observing that while it resolved several of RHS's earlier objections, certain provisions remained objectionable (doc. # 24). In addition, RHS filed a proof of claim in April 2005 and an amended proof of claim the next month, in which it asserted rights premised upon there being a valid mortgage with the Bartletts. A hearing on the First Amended Plan took place on June 23, 2005, at which the Defendants, RHS, and the Trustee appeared. Subsequently, the Trustee filed proposed findings and an order confirming the plan (doc. # 28), and on August 15, 2005, the Court signed the Findings and Order Confirming Plan (doc. # 29). A creditor is deemed to have consented to the terms of a plan when that creditor raises objections to the plan, settles them, and the court confirms the plan. See In re Duggins, 363 B.R. 233, 236 (Bankr. C.D. Ill. 2001) ("Unlike a negotiation to buy a house, for example, where offers expire, or are deemed rejected, unless affirmatively accepted by a date and time certain, the debtor's plan is an offer that is deemed accepted unless objected to prior to confirmation. See Fed. R. Bankr. P. 3015(f), Matter of Chappell, 984

13

F.2d 775, 782 (7th Cir. 1993). Even if the creditor disagrees with the treatment of its claim in a plan, once the plan is confirmed, the creditor is bound by its terms. 11 U.S.C. § 1327(a)."). Since filing their bankruptcy petition, the Defendants have "made ongoing post-petition mortgage and property tax payments directly to RHS, and RHS has been accepting the payments. Over the past year the Bartletts have been making arrearage payments to the Chapter 13 trustee under the confirmed plan" (doc. # 13, p. 18).

While the details of the Chapter 13 plan were being finalized, the Bartletts filed an adversary proceeding against Champion Mortgage to determine Champion's interest in the Property and to void Champion's lien (doc. #25, AP 05-1039). Champion did not appear, and the Bartletts moved for entry of default judgment. The Judgment in the adversary proceeding, issued on October 5, 2005, provided that Champion's interest in the Property was not secured by any valid lien and Champion's claim was wholly unsecured. The Court voided the lien that Champion had recorded in the town land records, leaving the Bartletts and RHS as the only parties who had an interest in the Property.

### B. Under Principles of Res Judicata, RHS is Estopped from Disputing the Defendants' Interest in the Property

1. The Parties' Arguments

The Defendants argue that both the pre-petition District Court Order and the order confirming their Chapter 13 plan have preclusive *res judicata* and collateral estoppel effect in this proceeding in determining their and RHS's rights under the mortgage. Specifically, the Bartletts contend that that the District Court Order reinstating their right to redeem their mortgage until foreclosure sale, "was final and conclusive as to all issues necessarily involved in a foreclosure, LaFarr v. Scribner, 150 Vt. 159, 161, 549 A.2d 651, 653 (1988)," and RHS "cannot raise objections now to findings and conclusions of the Decree, which it drafted" (doc. # 13 pp. 10, 11). With regard to the preclusive effect of the confirmed plan, the Defendants assert that the law is "well settled that a Chapter 13 plan that has not been appealed is entitled to *res judicata* treatment and precludes re-litigation of matters that could have been raised as objections to confirmation" – even to the extent that if a confirmed plan applies the incorrect law, it is still entitled to preclusive effect. (doc. # 13 p. 19, 20). See Underwriters Nat'l Assurance Co. v. North Carolina Life & Health & Accident Life Ins. Guar. Ass'n, 455 U.S. 691, 716 (1982) (stating that possibly erroneous finding by Indiana court was entitled to preclusive effect in subsequent North Carolina court proceeding); Stoll v. Gottlieb, 305 U.S. 165, 171-72 (1938) (ruling that even if a federal court lacked jurisdiction as to guaranties dealt with in a confirmed plan, confirmation order could not be revisited by state court, absent allegation of fraud); In re Ramey, 301 B.R. 534, 544 (Bankr. E.D. Ark. 2003) (holding that treatment of a claim as secured or unsecured was established conclusively by the plan, as "[i]t is well settled that an order [of confirmation] need not correctly apply the law to be given preclusive effect.").

14

RHS responds that the foreclosure decree cannot be given collateral estoppel effect because there was no litigation in the District Court foreclosure action which determined what interests the Bartletts might hold after expiration of the redemption period but before completion of the foreclosure sale; even if the issue could have been raised because the decree acknowledges the statutory right of redemption, the issue of the statutory right of redemption was never litigated (doc. # 23, pp. 20-21). RHS insists that the adversary proceeding brought by the Bartletts to void Champion's mortgage had no preclusive effect because the bankruptcy estate had no interest in the Property to begin with, id. p. 22, and similarly, the filing of the bankruptcy case, and the subsequent confirmation of the Bartletts' plan could not give the Defendants greater rights in the Property than they had prior to the bankruptcy – i.e., no rights at all – and therefore the plan has no *res judicata* effect.

After the cross-motions for summary judgment had been submitted to the Court, the Second Circuit issued In re Layo. This case is dispositive of the *res judicata* arguments raised by the parties in the instant case. In Layo, a mortgagee had inadvertently discharged a mortgage pre-petition. Several months later, the debtor filed for Chapter 13 relief. In his plan, the debtor treated the mortgage as a valid lien on his homestead and agreed to keep making payments on this secured debt. The bankruptcy court confirmed the plan. For about a year, the debtor made payments on the mortgage, as required by the confirmed plan. Upon the debtor's default, the mortgagee moved for relief from stay in order to foreclose on the property. The debtor and Chapter 13 Trustee responded by initiating an adversary proceeding, seeking to avoid the mortgage on the ground that it was discharged pre-petition, and asserting that in light of the pre-petition discharge of the mortgage, the lender was not secured and hence not entitled to relief from stay. The lender countered that, by virtue of *res judicata*, the terms of the confirmed plan barred the debtor and Trustee from collaterally attacking the plan's terms. The Layo Court agreed with the lender, holding that the confirmation order was entitled to *res judicata* effect and the terms of the plan treating the mortgage as valid bound the debtor. See Layo, 460 F.3d at 292-94.

The parties in this case briefed the impact of Layo on their respective positions. RHS seizes upon a case that the Layo opinion distinguished, Can-Pen Corp. v. Hanson, 58 F.3d 89 (4th Cir. 1995), to support its position that Layo is inapplicable here. In Can-Pen, the Fourth Circuit held that a confirmation order was not entitled to *res judicata* effect where the debtors sought to resolve a disputed lien classification via the treatment afforded the claim in their plan rather than by commencing an adversary proceeding. Because the debtors had disputed the validity of the bank's lien at the outset and had not taken the appropriate action to challenge the bank's position, the Can-Pen Court held that the debtors could not assert *res judicata* to bar the bank's efforts to establish the validity of their lien. RHS argues that a similar situation presents itself here, bringing this case into the Can-Pen ambit and making Layo inapposite: the Bartletts did not dispute that they lost legal and equitable title to the property, but rather than bringing an adversary proceeding to challenge the

15

transfer of the property to Champion as a fraudulent transfer, they sought to assert their position as holders of equitable title to the Property throughout the confirmation process, thereby vesting in themselves "a greater interest in the property than they enjoyed prior to filing their Chapter 13 petition" (doc. # 36 p. 4, quoting Layo, 460 F.3d at 295).

In contrast, the Bartletts posit that Layo supports their position in several pertinent respects. They point out that the Layo Court (1) affirmed the strong bankruptcy policy to give preclusive effect to the terms of an order confirming a chapter 13 plan; (2) rejected the Trustee's attempt to claim ignorance of facts readily available prior to the confirmation order through an inspection of land records; and (3) found that the status of the lender's lien could be agreed upon by the parties in the plan terms without filing an adversary action (doc. # 37).

2.   Applicability of *In re: Layo*

The fact pattern in Layo is remarkably similar to the fact pattern presented in this case. The only significant distinction between the two cases is that it was the debtor/mortgagor in Layo who was seeking to take a position contrary to the one he had taken at the confirmation hearing, whereas in the instant case it is the creditor/mortgagee. As in Layo, the issue before the Court here is whether the confirmed plan has *res judicata* effect and bars a party who consented to the treatment of a mortgage obligation in a confirmed plan from later taking a position that there was no valid mortgage at the time of the bankruptcy filing.

Corbett v. MacDonald Moving Servs., Inc., 124 F.3d 82 (2d Cir. 1997) sets out the Second Circuit's test for applying the principle of *res judicata* in bankruptcy proceedings involving a plan of reorganization.

> To determine whether the doctrine of *res judicata* bars a subsequent action, we consider whether 1) the prior decision was a final judgment on the merits, 2) the litigants were the same parties, 3) the prior court was of competent jurisdiction, and 4) the causes of action were the same. In the bankruptcy context, we ask as well whether an independent judgment in a separate proceeding would impair, destroy, challenge, or invalidate the enforceability or effectiveness of the reorganization plan.

Corbett, 124 F 2d at 87-88. The Court will address each prong of this four part test.[7]

As to the first prong, Layo held that an order confirming a chapter 13 plan is a final judgment on the merits. Layo, 460 F.3d at 293. The Court reasoned that the provisions of a confirmed plan bind the debtor and each creditor, "whether or not such creditor has objected to, has accepted, or has rejected the plan" citing § 1327(a). "The purpose of § 1327(a) is the same as the purpose served by the general doctrine of *res judicata*. There must be finality to a confirmation order so that all parties may rely upon it without concern that actions that they may later take could be upset because of a later change or revocation of the order."

---

[7] Vermont courts apply the same *res judicata* test as is followed in the federal courts. See State v. Carroll, 171 Vt. 395, 397-98, 765 A.2d 500, 502 (2000).

16

Layo, 460 F.3d at 293, citing 8 Collier on Bankruptcy, ¶ 1327.02 (15 ed. Rev.). "Confirmation of a chapter 13 plan customarily is *res judicata* as to all issues that were or could have been decided during the confirmation process." In re Carvalho v. Fed. Nat'l Mortgage Ass'n, 335 F.3d 45, 49 (1st Cir. 2003).

The second prong of the Corbett test is met since the litigants involved in this adversary proceeding and in the confirmation process are in fact identical: RHS and the Bartletts. The third prong is also satisfied as there is no dispute that this bankruptcy court is a court of competent jurisdiction with respect to the entry of the confirmation order.

Hence, the only question for this Court to address is whether the fourth prong of the Corbett test has been satisfied. The Second Circuit's most recent jurisprudence on this point in unequivocal. Layo instructs, "[t]o satisfy the fourth prong of the Corbett test for *res judicata*, there must be identity of causes of action, which means that the second action must involve the same 'claim' or 'nucleus of operative fact' as the first, Interoceanica Corp. v. Sound Pilots, Inc., 107 F.3d 86, 90 (2d Cir. 1997)." 460 F.3d at 292 (internal citation omitted). See Sure-Snap Corp. v. State St. Bank & Trust Co., 948 F.2d 869, 874 (2d Cir. 1991) (holding that in order to determine whether the causes of action are the same, a court must examine whether the same transaction, evidence, and factual issues are involved in both cases). The two court actions at issue here are (1) the confirmation of the Defendants' chapter 13 plan which concluded on August 15, 2005, and (2) the instant adversary proceeding challenging the Defendants' interest in the Property which commenced in February 2006.

The "critical question for *res judicata* purposes is whether the party could or should have asserted the claim in the earlier proceeding." Layo, 460 F.3d at 292 (quoting In re Howe, 913 F.2d 1138, 1146 n. 28 (5th Cir. 1990)). As discussed earlier, RHS was in a position to discover whether the Bartletts had exercised their right to redeem in the Champion foreclosure. Moreover, RHS certainly possessed the legal sophistication to appreciate the importance of an inquiry into such a question. This Court finds that RHS could have discovered the status of the Defendants' interest in the Property prior to the bankruptcy filing and could have asserted the claim that the Bartletts had no interest in the Property as of the date of filing in the context of the confirmation hearing. As Layo pointedly noted,

> checking the county records is the most basic type of due diligence. Inspection would have uncovered the history of discharged and undischarged mortgage liens on the property. That is, the facts that form the basis for the Trustee's challenge to the mortgages were available in the county clerk's office for anyone to see. The Trustee had clear opportunities to object to the validity of the mortgage lien listed in the confirmed Chapter 13 plan – when [the mortgagee] filed its claim. . . and when Layo consented to and included that claim in his final Chapter 13 plan.

Layo, 460 F.3d at 293.

17

If we replace both "Trustee" and "Layo" with "RHS," the same conclusion obtains in this case as well – *res judicata* bars RHS's collateral attack on the confirmed plan. RHS filed objections to the plan that were the subject of a confirmation hearing, negotiations, and settlement. It could have included an objection based upon the Bartletts' alleged lack of interest in the Property at that time, just as it is belatedly doing in this adversary proceeding. It did not do so. Both this adversary proceeding and the confirmation process involve the same nucleus of operative facts, and thus the fourth Corbett factor is established.

Finally, this Court must consider whether an "independent judgment" in this proceeding would "impair, destroy, challenge, or invalidate the enforceability or effectiveness of the reorganization plan." Corbett, 124 F.3d at 88. The answer is unequivocally yes. If this Court were to rule that the Bartletts had no interest in the Property as of the date they filed their bankruptcy case, such a ruling would completely undermine the effectiveness of the reorganization plan, which explicitly identified as one of its main purposes "to cure the default on [the Bartletts'] home mortgage held by U.S.D.A./Rural Housing Service pursuant to 11 U.S.C. § 1322(b)(3), (5). . ." (doc. # 21). In sum, all of the elements of *res judicata* have been met, the equitable doctrine therefore applies, and, as a result, RHS is estopped from now attacking the confirmation order or challenging the Defendants' interest in the Property.

Similarly, the District Court Order is entitled to *res judicata* effect. Turning to the four-part test of Corbett, this Court makes the following findings as to each prong. First, the District Court Order was a final judgment on the merits. Second, the District Court is a court of competent jurisdiction with respect to the foreclosure action. Third, although Champion was also a defendant in the District Court action, that fact does not skew the identity of parties analysis because the right at issue (whether the Bartletts had a statutory right of redemption) was decided as between RHS and the Bartletts. See Charles A. Wright, Arthur R. Miller, Edward H. Cooper, 18A Fed. Prac. & Proc. Juris.2d § 4449 (stating that "[t]he bare fact that other parties were involved in the prior action and are not involved in the later action does not oust preclusion as to parties participating in both actions") (citing cases); see generally Alpert's Newspaper Delivery Inc. v. The New York Times Co., 876 F 2d 266, 270 (2d Cir. 1989) ("The issue is one of substance rather than the names in the caption of the case.") Finally, the issues are the same: the District Court Order resolved the Parties' rights under the mortgage (granting the Bartletts the right to redeem at any time up to the time of the foreclosure sale). In this adversary proceeding, RHS is litigating whether the District Court Order gave the Bartletts a right to redeem. RHS could have discovered that the Bartletts had not redeemed in the Champion foreclosure action and then could have relied upon that information to amend its District Court judgment. It did not do so. In addition, an independent judgment of this Court deciding that the District Court Order did not reinstate the Bartletts' statutory right of redemption would totally eviscerate the confirmed plan. Hence, the principle of

18

*res judicata* applies to the District Court Order as well and serves as an additional bar to RHS contesting the validity of the Defendants' interest in the Property as of the date of the bankruptcy filing.

RHS's arguments to the contrary are utterly unpersuasive. Its collateral estoppel argument – that the same issues must actually be litigated in the two actions – does not apply to *res judicata*, where the issue is whether the claims could have been raised, not whether they were in fact litigated, and they clearly could have.

Neither is this case governed by Can-Pen, first, because no one is arguing that the Bartletts had a greater interest in the Property post-petition than they enjoyed prior to filing their petition; and second, because no one is contesting the validity of RHS's lien. The statutory equity of redemption that the Bartletts possessed at the point they filed their plan was confirmed was not obtained by filing a bankruptcy case, or as the Can-Pen court would say, through the "simple expedient of passing their residence through the bankruptcy estate." Can Pen, 58 F.3d at 92-93. Rather, it was a right accorded them by the actions of RHS.

3. Remaining Issues

Determining that the Bartletts had an interest in the Property on the date they filed their bankruptcy petition and addressing the *res judicata* factors pertinent to the parties' arguments does not resolve all open issues. This is particularly so since one caveat to the applicability of *res judicata* is fraud. Layo, 460 F.3d at 292-93 (noting that the exceptions to the application of *res judicata* are either fraudulently concealed evidence or evidence that could not have been discovered with due diligence). The Court is cognizant that Count I of the RHS complaint sounds in fraud and seeks a revocation of the confirmation order on this basis.[8]

Since the parties have entered into a Stipulated Scheduling Order expressly stating that litigation of Count I of the complaint would be held in abeyance pending litigation on Count II, the cross-motions for summary judgment were limited to Count II of the complaint. Accordingly, the Court will refrain from addressing RHS's allegations of fraud at this time. If RHS chooses to pursue the first cause of action, the Court will address then the issue of whether RHS's arguments pertaining to Count I warrant a modification of the Court's conclusions as to *res judicata* enunciated in this decision.

## CONCLUSION

For the reasons set forth above, the Court finds that the Defendants had an interest in the Property at

---

[8] RHS asserts that the Bartletts' plan violated its due process rights to reasonable notice of the consequences of the plan and a meaningful opportunity to object to confirmation, and in these circumstances, the general principles favoring finality of confirmed plans "must give way." (doc. # 23, p. 28).

19

the time they filed their bankruptcy petition because their right of redemption had been reinstated by the District Court Order and had not yet expired as of the date of the bankruptcy filing. Therefore, the Property is property of the bankruptcy estate and was properly included and addressed in the chapter 13 plan. Additionally, the Court finds that under the principle of *res judicata*, RHS is estopped from challenging the Defendants' interest in the Property, based upon both the District Court Order and the order confirming the Bartletts' chapter 13 plan.

Accordingly, the Court grants the Defendants' motion for summary judgment and denies the Plaintiff's motion for summary judgment on Count II of the complaint.

This constitutes the Court's findings of fact and conclusions of law.

The Court will enter a separate order that will include a schedule for adjudicating the remaining open issues between the Parties.

November 1, 2006  
Rutland, Vermont

_____  
Colleen A. Brown  
United States Bankruptcy Judge

20